JOHN DAVIS & GEORGE R. WEATHERSBY *v.* HOOPES & BOGART.

1. CHANCERY: PLEADING.—Where D. obtained an injunction, restraining all proceedings in execution of a judgment rendered against him as an individual and also as executor, it will be intended that he did so in both capacities. So, if a bill in equity should be afterwards filed against D. by the plaintiff on the judgment thus enjoined, seeking to enforce the collection of the judgment, upon the ground, that during the pendency of the injunction and before its dissolution, his remedy at law had been barred by the Statute of Limitations, it will be entered as a proceeding against him individually, and as executor.

2. SAME.—If a bill filed against one of several sureties in a judgment, for the purpose of enforcing its collection, aver that the complainant is informed that the other sureties are dead, and that their representatives are unknown to him, it will be prima facie a sufficient reason for omitting them from the bill.

3. PRINCIPAL AND SURETY: REMEDY AGAINST.—The sureties in a judgment are severally liable to pay it, and the plaintiff may enforce it against any one of them, having first exhausted the estate of the principal.

4. EXECUTOR AND ADMINISTRATOR: LIABILITY OF, FOR PROSECUTING AN INJUNC-

TION; CHANCERY: STATUTE OF LIMITATIONS.—An executor obtained an injunction restraining the collection of a judgment at law, without giving an injunction bond; the chancellor afterwards dissolved the injunction, and the executor appealed, giving a bond only for the costs of the appeal. Whilst the injunction was in force, the Statute of Limitations barred the issuance of another execution upon the judgment, and afterwards upon the appeal the injunction was dissolved. Held, that the appeal bond being only for costs, and the executor not being liable on his bond, for the prosecution of the injunction suit, the plaintiff was without remedy at law, and, therefore, entitled to the aid of a court of equity, to enforce the collection of his judgment.

5. CHANCERY: JURISDICTION TO AID WHEN A PARTY HAS BEEN BARRED OF HIS LEGAL RIGHT, BY FAULT OF HIS ADVERSARY.—Where a party has been deprived of his legal right, by unfounded and unconscientious litigation, and is without legal remedy, he may come into equity, and enjoin the adverse party from availing himself of the advantage which he has obtained, and may, if necessary, have a decree securing to him the benefit of the legal right, which he has lost by the unjustifiable conduct of his adversary; and hence, where the defendant, in a judgment at law, improperly obtained an injunction restraining its collection, and kept the same in force until the Statute of Limitations had barred the issuance of another execution, the plaintiff may maintain a bill in equity to enforce the collection of the judgment.

6. PRINCIPAL AND SURETY: PRIVITY BETWEEN.—The sureties in a judgment at law, which has been enjoined by the unconscientious litigation of the principal until it has become barred by the Statute of Limitations, are in privity with the principal, and bound to all the legal consequences of his acts; and will not therefore be permitted to avail themselves of the advantage of the Statute of Limitations thus unconscientiously obtained.

7. CLERICAL ERROR: WAIVED BY ACQUIESCENCE.—Great indulgence is extended to clerical misprisions, and where they have been acquiesced in for a great length of time, the omission or inaccuracy, if it reasonably appear what was intended, will be supplied by intendment, and therefore where in the entry of a judgment the words "it was considered by the court that the plaintiff recover" were omitted, and the defendant afterwards acquiesced in the sufficiency of the entry as a judgment, by procuring an injunction restraining the execution of the judgment upon other grounds, and kept up the litigation for twelve years, he will not then be permitted to say there was no formal judgment against him.

8. VALUATION LAW: EFFECT OF FORFEITURE OF BOND UNDER.—The forfeiture of a bond given under the Valuation Law is a satisfaction of the original judgment, and a discharge of all the defendants therein who did not join in the execution of the bond.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

The substance of the bill and the proceedings in the court below

are sufficiently set out in the opinion of the court; it is only neces-
sary in addition to set out the judgment rendered in favor of *Hoopes
& Bogart* v. *John Davis et al.*, in October, 1839. The entry of
this judgment is as follows:

Circuit Court, October Term, 1839, 2d day.

HOOPES & BOGART  
*v.*  
JOHN DAVIS, Exr., &c.

This day came the parties by their attorneys, and thereupon came
the following jury, to wit, William H. Bauth and eleven others,
who returned into court the following verdict, to wit : We, of the
jury, find for the plaintiff, and assess his damages to the sum of
$774 74, the damages by the jurors in their verdict aforesaid an-
nexed, and also their costs by them in this behalf expended.

*George L. Potter*, for appellants.

Hoopes & Bogart filed their bill against Davis and others, who
demurred thereto; and this appeal is from the order overruling
their demurrer.

The charge is, that complainants, in 1839, recovered judgment
against Davis, executor of Lucy, who gave a forthcoming bond,
with George R. Weathersby, as surety, which was forfeited. That
execution on bond was levied, and Davis, claiming benefit of the
Valuation Law, &c., gave bond as executor and individually, with
Mary Weathersby, Alexander Tennell, and George W. Moore, to
have the property forthcoming; which bond was forfeited, and had
the force of a judgment. Execution issued on this last judgment.
The equity of the case is, that Davis obtained an injunction, and so
stayed process till the claim is barred by limitation; and on this
ground a decree is sought against John Davis, *individually*, George
R. Weathersby, and Mary Weathersby, for the amount of the debt
and interest.

Tennell and Moore are said to be dead, and complainants do not
know who their representatives are, &c.

1. It will be noted that George Weathersby was on the forth-
coming bond, the judgment upon which, was extinguished by the

judgment on the valuation bond, to which he was not a party ; and therefore complainants had no demand against him.

2. Davis signed both bonds as executor, and also signed the valuation bond individually.   It is the judgment on this bond which is sought to be recovered.   As to that judgment, Davis and Mary Weathersby stood as sureties for the estate of Lucy, the original debtor ; and it is plain, that they cannot be subjected until the estate of Lucy is exhausted.   The bill is defective, therefore, in this, that it seeks a recovery from the sureties only, and the executor of Lucy is not made a party.

3. Moore and Tennell, also co-sureties, are not parties.   An excuse is attempted, but it is insufficient.   Complainant is informed (p. 6) that they are dead, but does not know whether they are alive or not; does not know whether they have representatives.   There is no showing of any diligence, no inquiry.   It is obvious that a party cannot thus come in on a mere plea of ignorance, as to matters he is bound to ascertain before he sues.

4. The bill is filed on the rule declared in *Sugg* v. *Thrasher*, that a party who has delayed his creditors by injunction, cannot conscientiously interpose a bar by limitation caused by his wrongful act.   But the sole ground of complaint, in that respect, is against John Davis, who alone obtained the injunction.   Mary Weathersby and George Weathersby are innocent in that matter, and not under condemnation of the rule.   They have not delayed complainants, and are not responsible for the act of Davis.   No equity arises against them because of his acts.

It is uncertain, from the bill, whether Davis obtained the injunction as executor of Lucy, or on some matter relating to himself, individually, as surety on the valuation bond.   If he obtained it as executor, he is not responsible individually, as the bill seeks to charge him.   Equity does not proceed on the ground of punishment for the delay, but simply on the ground that a party who has obtained delay by order of court, shall not interpose the delay thus caused, in bar of a just demand ; he shall not delay a creditor in chancery, until remedy at law is gone, and thus defeat the debt. But a court of chancery will permit the debt to be collected from the delaying party, the lapse of time notwithstanding.   If Davis, as executor, obtained the injunction, he is not responsible indivi-

Davis & Weathersby *v.* Hoopes & Bogart.

dually. Complainants can only proceed against the executor of Lucy, who alone has delayed them.

If John Davis, individually, obtained the injunction, it did not prevent execution against the executor of Lucy, the principal debtor, and there is no charge that the estate is insolvent. No reason is shown why the money was not made from the estate, nor why a decree is not sought against it, but against Davis.

5. No ground is shown for equitable relief against any one. The mere fact that the statute has barred the judgment that was enjoined, does not create an equity. If complainants have still an adequate remedy at law, they must pursue it; they could come into equity only on the ground of *necessity*, to preserve their debt. The statutes regulating the grant of injunction, provide an adequate remedy at law for this sort of case. An injunction bond is required, with sureties, to protect the party enjoined against all damages. There is no suggestion that the bond in this case is not an ample security. If they say Davis obtained the injunction as executor, and gave no bond, the reply is, that his bond as executor, is the security; but the bill does not charge that he sued as executor. In *Work* v. *Harper*, where the party enjoined had lost his remedy at law, pending the injunction, this court held, he was properly remitted to the bond for redress. (Opinion Book G. 165.) So long as the remedy on the injunction bond is unimpaired, there is no pretence for equitable relief. That bond was exacted for this very contingency, and the remedy upon it, at law, is the only relief to which complainants are entitled.

6. But complainants show that they have not been damnified; they have no judgment against any one. Mr. Ellett suggests that only a few words are wanting to make a complete judgment. True we need only supply the award of judgment upon the verdict, with a direction for a levy *de bonis testatoris*, or, in other words, add a whole judgment to the verdict. It is vain to pretend there is any judgment (p. 175). The words, *it is considered,* &c., are of the very essence of a judgment, and they are wholly wanting here. The entry is much more defective than that in *Gridley* v. *Denny*, which this court pronounced a nullity. 2 How. Miss. R. 820.

The case of *Hinckle* v. *Carruth*, 3 Brevard, 402, only shows that the usage of the court was, to extend great indulgence to the

proceedings of certain inferior courts which kept no record. It is not pertinent to this case.

The rule of estoppel is invoked, but why should we be estopped? We never persuaded complainants, or induced them to suppose they had a judgment. On the contrary, they asserted the fact of a judgment, and deluded us into that belief; harassed us with illegal levies, and annoyed us for years. The technical law of estoppel does not prevail in equity, where the truth, according to the fact, may always be shown, except where a party has induced another to believe and act on erroneous statements, which is not the case here. 1 Stor. Eq. Jur. § 197, 202.

. But the recitals in the forthcoming and valuation bonds would not constitute an estoppel even at law. If there was no original judgment, those bonds were nullities. 4 S. & M. 547–8; 4 S. & M. 563.

*H. T. Ellett,* for appellees.

The appellees filed their bill in chancery, setting out a judgment recovered by them in Rankin Circuit Court, on the 22d October, 1839, for $774 74, against Davis, as executor of E. A. Lucy. Execution bonded with G. R. Weathersby as surety, and forfeited first Monday of May, 1840. Execution on bond levied, valuation claimed, and bond given for delivery of property in twelve months. Forfeited, December 1st, 1841. Execution on last-named bond issued December 26th, 1841, and returned May 4th, 1842, " stayed by injunction."

The bill states that after the forfeiture of the last-named bond, Davis, for the purpose of further delay, filed a bill in chancery, and procured an injunction to stay proceedings, on the false and fraudulent pretence, that he did not owe the debt for which the original judgment was rendered. That he prolonged the litigation until the 18th January, 1851, when the injunction was dissolved and the bill dismissed. That he immediately appealed, giving bond for costs only, and kept the injunction alive until March, 1854, when the High Court affirmed the decree of the chancellor, at which time seven years had expired after the issuance of the last execution. That an execution was issued June 14th, 1854, which the appel-

lants superseded, on the ground that all remedy on the judgment at law, was barred by limitation. The petition for supersedeas is made an exhibit.

The bill prays that the appellants be enjoined from setting up the Statute of Limitations at law ; or that an account of what is due be taken, and a decree in the Chancery Court rendered for the payment thereof.

The appellants demurred, and they appealed from the decree overruling their demurrer.

This case is in all material respects precisely similar to the case of *Sugg et al.* v. *Thrasher et al.*, 30 Miss. 135, in which the point respecting the Statute of Limitations was decided against the views of the appellants. It is sufficient to refer to that case. It is now said that inasmuch as Davis obtained the appeal, upon giving a bond for costs only, the appeal did not keep alive the injunction. He ought not to have been allowed to appeal without giving a bond for the debt; but at that time it seems to have been thought that he still preserved his character as executor, and as such, was not bound to give bond. The bond, however, has nothing to do with the question whether the appeal kept the injunction alive. It was from the order dissolving the injunction that the party appealed. In the face of that appeal, we certainly could not treat the injunction as finally disposed of, and go on to execute our judgment.

In this case we desire to have a decree in the Chancery Court, for the amount due on the judgment at law, and an execution from that court for its collection.

The court will, of course, affirm the judgment of the chancellor on the demurrer, unless some other difficulties exist in this case besides the Statute of Limitations, and we respectfully ask the judgment of the court on the question of our right to a decree for the payment of the money.

That we are so entitled seems to be well sustained both by principle and authorities.

The following authorities are referred to for the position, that in a case like the present, the Court of Chancery will supply and administer a substitute for the original legal right which the party has lost, and will give relief. 2 Story Eq. Jur. 679, sec. 1316 a; 916, sec. 1521; *Pulteney* v. *Warren*, 6 Vesey, Jr. 73; *Bond* v.

*Hopkins*, 1 Scho. & Lef. 413, 431, 4; *Hovenden* v. *Ld. Annesley*, 2 Ib. 630, 646; *Mackenzie* v. *Powis*, 4 Brown Par. C. 328; *East India Co.* v. *Campion*, 11 Bligh. 158; *O'Donnell* v. *Brown*, 1 Ball. & Beat. 263.

At law, interest is not allowed on a bond beyond the penalty (*Wild* v. *Clarkson*, 6 T. R. 303), and in general the same rule prevails in equity. *Clarke* v. *Seton*, 6 Vesey, Jr. 414. But when the creditor has been kept out of his money *by injunction*, or other proceeding, by which he has been prevented from going on at law, he will be allowed in equity all interest accruing by the delay. *Hale* v. *Thomas*, 1 Vernon, 349; *Duval* v. *Terry*, Show. Par. C. 16; *Grant* v. *Grant*, 3 Sim. 340; (6 Eng. Ch. 341.)

Two other points were made in the court below, both designed to show that there was no valid original judgment in the court below.

The judgment we proceed on is the judgment on the *valuation bond*, which we presume was a satisfaction of the judgment on the *forthcoming bond*, which latter was a satisfaction of the original judgment. Both these bonds were for the performance of acts *in pais* by the obligors, which acts they chose not to perform. They then continued to treat the original judgment as a valid judgment, and as such litigated it for twelve years. If ever there was a case for an estoppel this would seem to be one.

But what are the points?

1. The record does not show that the jury were sworn.

It is doubtful whether this is an error for which the judgment could have been reversed, for under our practice regular jurors are sworn generally for the term, and talesmen for the day, and the jurors are never sworn in a particular civil case. This general duty it would surely be intended was performed by the court, especially when no objection was made in the court below. It is enough, however, to say that the court had full jurisdiction of the cause and of the parties, and its judgment is not void on account of irregularities committed, however apparent.

2. It is said there was no judgment pronounced on the verdict.

The entry is as follows: " We, of the jury, find for the plaintiff, and assess his damages to the sum of seven hundred and seventy-four dollars and seventy-four cents,—the damages, by the jurors in their verdict aforesaid assessed, and also their costs by them in this behalf expended."

The words "therefore, it is considered that the plaintiffs recover," are accidentally omitted in the entry. The omission is manifest, but the meaning is clear and plain. It is evident that the court acted on the verdict, for the whole of the latter part of the entry is a part of the entry of a judgment, and nothing else. The court will supply the words, evidently wanting, to perfect the sense. A clerical misprision like this, will never be held to avoid a judgment, but the court will give effect to it according to its plain meaning.

Much indulgence is extended in support of these entries. It is necessary for the public safety, and the preservation of titles. Many authorities are cited in the case of *Mandeville* v. *Stockett*, 28 Miss. 398, in which imperfect and informal entries were upheld. In *Hinckle* v. *Carruth*, 3 Brevard, 402, it is said, " where there is a single word, or act of the court from which a judgment could be inferred, it is sufficient." Here, there is a complete and formal judgment, except a single line, dropped in the hurry with which such things are necessarily drawn up in the Circuit Courts. The entry is informal, but no lawyer can read it without involuntarily supplying the very words required to make it perfect. It is not, then, a case of no judgment, but only of an informal judgment.

Especially, after the lapse of time, and the conduct of the party, in treating it as a judgment for so many years, and in so many solemn forms, ought it to be destroyed, and the rights of the appellees defeated forever, by mere hypercriticism ?

On the whole case, it is submitted that the judgment ought to be affirmed.

HANDY, J., delivered the opinion of the court.

The bill in this case states in substance that the complainants recovered a judgment at law in October, 1839, for $774 74, against Davis, executor of one Lucy, upon which a forthcoming bond was executed, with George R. Weathersby as surety, which was forfeited in May, 1840, and execution issued thereon, which was levied on slaves, which were valued under the valuation law, and a bond thereupon executed for the delivery of the property in twelve months after its date ; this bond was forfeited in December, 1841, and an execution issued thereon against the obligors, Davis as executor, and Mary Weathersby, Tennell, and Moore, individually, to May Term,

1842, which was returned "stayed by injunction;" that in April, 1842, Davis filed his bill in chancery, and obtained an injunction restraining the plaintiffs from any further proceedings upon their execution, which injunction was obtained upon false pretences and statements, and was continued until 18th January, 1851, when the injunction was dissolved and the bill dismissed; that Davis immediately appealed from that decree to this court, giving bond for costs only, and in March, 1854, the decree was affirmed, said litigation having been protracted all that time, and the execution of the judgment restrained, notwithstanding the diligent exertions of the plaintiffs to have the injunction dissolved; and that by means of the unfounded and protracted litigation carried on by the defendants, when the injunction was finally dissolved in this court, the Statute of Limitations had barred the execution of the judgment at law. Still an execution was issued upon the judgment, and thereupon Davis, with George R. Weathersby and Mary Weathersby, filed a petition and obtained a supersedeas to the execution, and claim a perpetual stay of execution, on the ground that all execution is barred by the Statute of Limitations.

The bill states that Tennell and Moore are believed to be dead, and that the complainants do not know whether they have any representatives, and prays an account and decree against Davis and George R. and Mary Weathersby, and that they be enjoined from further proceedings upon the supersedeas, and from setting up the Statute of Limitations as a bar to said execution.

The defendants filed a demurrer, which was overruled, and the case is thereupon brought here.

The first objection to the bill which we will notice is, that it does not seek a recovery against Davis, as executor of the estate of Lucy, but proceeds against him and the other obligors to the bond individually, these parties being sureties, and only liable when the money cannot be made from the estate of their principal; and that the bill is defective because the executor is not made a party.

It appears by the bill that the execution enjoined (in consequence of which the alleged injury has arisen), was against Davis as executor, and also in his individual capacity as a surety. When it is said, then, that the "said Davis" obtained an injunction restraining the execution, it must be intended that he did so in both

capacities; for if it operated only as to him individually and the other sureties, it could not be said that the plaintiffs were "restrained thereby from any further proceedings upon the execution," as the bill alleges. And he must be understood as being made a party to the present bill to the same extent, as he was a party to the bill enjoining the plaintiff's execution. This is but a fair construction of the purview of the bill, and as the general language employed may embrace him in both capacities, the decree which may be rendered upon the final disposition of the cause, can be so framed as to obviate the ground of this objection. The objection is, therefore, not tenable.

Another objection is that Tennell and Moore, the co-sureties, are not made parties. The bill states that the complainants are informed that they are dead, and that their representatives, if they have any, are not known to them. This is prima facie a sufficient reason for omitting them from the bill. But no injury is done to the defendants by the omission. Each defendant is severally liable to pay the judgment, if liable at all; and the plaintiff has the right to enforce it against any one of them, being only bound to proceed first against the estate of the principal, if sufficient to pay it. If he collects the money from one of the sureties now sued, the omission of a surety in this bill would not impair the claim of the surety making the payment for contribution against his co-surety. No injury is, therefore, done to the defendants by the omission of the other sureties.

The next objection urged in support of the demurrer is, that it does not appear by the bill, but that the complainants have an ample remedy at law for the recovery of their debt, by suit upon the injunction bond, which was required by law to be given upon obtaining the injunction. Under the practice formerly prevailing, executors were not required to give injunction bonds; and from the allegations of the bill, which are admitted by the demurrer, it must be taken, either that no bond was given, or that it is insufficient; for the averment is, that the complainants are " wholly without remedy at law." Nor can it be said that there is a remedy upon the bond of Davis, as executor; for, upon no sound principle could that bond be held as a security for the prosecution of an injunction suit. And as to the remedy upon the appeal bond, it is

alleged that that security is altogether inadequate, being merely for the costs of the suit.

Again, it is objected that, as the principle upon which the bill is founded, only debars a party of the benefit of an advantage which he has obtained by unfounded and unconscientious litigation, none but the direct and active parties, who have carried on the litigation, can be charged on account of it; and therefore if the litigation was carried on by Davis, as executor, neither he, in his individual capacity, nor the other defendants to the judgment enjoined, not being direct parties to that suit, should be charged with the debt which has been unjustly defeated by that litigation. This position cannot be sanctioned. It can have no force as to Davis, because what he did as executor, he must necessarily have sanctioned and co-operated in, as surety, and the consequence of his litigation, as executor, was to prevent execution of the same judgment against him as surety. As to the other sureties, they were in privity with the principal, and are bound to all the legal consequences of his acts. The judgment was enjoined as to them, as well as to the principal, and they should suffer the loss which they have enabled their principal to occasion to the complainants.

Another ground of objection is, that the exhibit to the bill showing the judgment under which the complainants claim, does not show that a valid judgment was entered. It appears that a verdict was duly returned, assessing the plaintiff's damages, and that the words immediately following the verdict, do not state that it *"was considered by the court that the plaintiff recover."* It is manifest, from the entry, that there was a clerical omission in this, for otherwise, the words immediately following would be unmeaning. Great indulgence is extended to clerical misprisions; and where they have been acquiesced in for a great length of time, the omission or inaccuracy, if it reasonably appear what was intended, will be supplied by intendment. In this case, the defendant has acquiesced in the fact that a judgment was rendered, for a great length of time, and has actually recognized it as a judgment in all the protracted litigation which he has carried on. By obtaining his injunction, he waived and released all errors at law in the record. Besides the legal intendment in favor of the record, he cannot now,

after all these acts of recognition, be permitted to say that there was no formal judgment against him.

The last ground of error insisted upon is, that the bill is not maintainable as to George R. Weathersby.

It appears that George R. Weathersby was not a party defendant to the judgment enjoined, the judgment against him having been satisfied by the execution and forfeiture of the valuation bond, to which he was not a party. The demurrer should, therefore, have been sustained, and the bill dismissed, as to him.

As to the general equity upon which the bill proceeds, we consider the rule well founded in principle and sanctioned by authority, that when a party has been deprived of his legal right by unfounded and unconscientious litigation, and is without legal remedy, he may come into equity and enjoin the adverse party from availing himself of the advantage which he has obtained, and may if necessary have a decree securing to him the benefit of the legal right, which he has lost by the unjustifiable conduct of the adverse party. And in this view, the general equity of the bill was properly sustained by the chancellor. 2 Story's Eq. Jur. § 1316 a; *Sugg* v. *Thrasher*, 30 Miss. 135.

The decree is reversed, and the bill dismissed as to George R. Weathersby, and it is affirmed as to the other defendants, who are decreed to pay the costs of the appeal, and to answer the bill within sixty days.