**Affirmed and Memorandum Opinion filed January 14, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00332-CV

---

## U.S. ROF III LEGAL TITLE TRUST 2015-I, Appellant

### V.

## MORLOCK, L.L.C., Appellee

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-14187**

---

### MEMORANDUM OPINION

Appellant, U.S. ROF III Legal Title Trust 2015-I ("ROF"), appeals the grant of summary judgment in favor of appellee, Morlock, L.L.C. ("Morlock"). ROF contends the trial court (1) erroneously granted summary judgment because it "fail[ed] to properly apply concepts of equity and fairness to toll limitations or otherwise estop Morlock from asserting that ROF III's lien was void based on passage of time"; and (2) abused its discretion when it denied ROF's motion for

new trial because "evidence discovered after summary judgment would have produced a different result as a matter of law." We affirm.

## BACKGROUND

In 2008, Thearith Soeung and Maly May ("Borrowers") purchased property located at 14907 East Lime Blossom Court in Cypress, Texas (the "Property"). Borrowers executed a promissory note payable to lender, Destino Mortgage, Inc. The note was secured by a deed of trust under which Mortgage Electronic Registration Systems, Inc. was named a beneficiary and acted "as a nominee for Lender and Lender's successors and assigns." Mortgage Electronic Registration Systems, Inc. assigned its interest in the deed of trust to Metlife Home Loans, L.L.C. ("Metlife").

The Property had a prior recorded homeowners' association lien for assessments created through a declaration of covenants. When the Borrowers failed to pay assessments, the homeowners' association foreclosed on the Property. Morlock then purchased the Property "subject to any superior liens and encumbrances against the property" at a foreclosure sale in September 2011.

On December 12, 2011, Metlife sent the Borrowers a Notice of Prior Acceleration, in which it stated that (1) "despite the sending of written notice of default and notice of intent to accelerate the maturity of the Loan, the default was not timely cured"; (2) Metlife "accelerated the maturity of the Loan, and declared the entire balance of the Loan due and payable in full"; and (3) Metlife enclosed "a copy of the Notice of the Substitute Trustee's Sale that advises the foreclosure sale of the Property authorized by the Deed of Trust will take place on January 03, 2012, at the place designated by the Harris County Commissioners Court pursuant to Section 51.002, and the Property will be sold to the highest bidder for cash."

2

Pursuant to the deed of trust, Metlife posted the Property for a substitute trustee's sale scheduled for January 3, 2012. On the day of the scheduled foreclosure sale, Morlock filed a petition and application for temporary restraining order in Texas state court seeking to enjoin the foreclosure sale and quiet title to the Property. Metlife removed the case to federal court based on diversity jurisdiction and moved to dismiss for failure to state a claim. On January 9, 2013, the magistrate judge signed a memorandum (1) rejecting Morlock's argument that "its lien, obtained pursuant to the Declaration of Covenants, is superior to" Metlife's lien because "under Texas law, a homeowners['] association's lien for assessments, such as that set forth in the Declaration of Covenants, is subordinate to first priority mortgage liens"; (2) finding Morlock "failed to establish the superiority of its title to the Property relative to" Metlife and thus Morlock could not establish a cause of action to quiet title; and (3) recommending that summary judgment be granted in favor of Metlife and that Metlife's motion to dismiss be granted. The Fifth Circuit affirmed in a per curiam opinion on September 12, 2013.

Metlife did not post the Property for a foreclosure sale after the federal court opinions issued and the deed of trust was assigned to several different entities over time. ROF acquired the deed of trust by assignment in July 2015. On January 11, 2016, ROF posted a notice of foreclosure sale for February 2, 2016, pursuant to the deed of trust, then ROF purchased the Property at that sale. When ROF demanded possession of the Property, Morlock filed suit in March 2016 seeking a declaratory judgment that (1) enforcement of the deed of trust was barred by the statute of limitations and ROF could not conduct a foreclosure sale of the Property, (2) the deed of trust is unenforceable and the trustee's foreclosure sale and the foreclosure sale deed are void, and (3) "strikes the Trustees Deed and Deed of Trust as clouds

on Plaintiff's title to the Property." Morlock also sought a temporary restraining order and temporary injunction.

In March 2017, Morlock moved for summary judgment arguing that the trustee's sale and trustee's sale deed "were conducted under a deed of trust which was void . . . because enforcement of the deed of trust was barred by the statute of limitations." ROF filed a response to Morlock's motion, arguing the statute of limitations was tolled because it was prevented from conducting a foreclosure sale during the pendency and resolution of Morlock's first suit. In April 2017, the trial court denied Morlock's motion for summary judgment.

In May 2017, ROF filed a summary judgment motion asserting that (1) foreclosure of the Property was not barred by the statute of limitations but limitations was equitably tolled until Morlock's first suit was resolved in the courts because "the viability of [ROF]'s foreclosure action was dependent upon the outcome of the original quiet title suit against [ROF]'s predecessor in interest, Metlife"; and (2) Morlock's statute of limitations defense to foreclosure is barred by quasi estoppel. Morlock responded to ROF's motion making substantially similar arguments it had proffered in its summary judgment motion.

The trial court signed an order denying ROF's summary judgment motion on October 31, 2017. On the same day, the trial court signed an order (1) setting aside its April 18, 2017 order denying Morlock's summary judgment motion, and (2) granting Morlock's summary judgment motion.

In November 2017, ROF filed a "Motion for Reconsideration, Motion for New Trial, and Motion for Leave to Include Summary Judgment Evidence" based on newly discovered evidence. In response, Morlock argued that ROF failed to establish it was entitled to a new trial based on newly discovered evidence.

4

The trial court signed an amended final summary judgment on January 25, 2018, ordering (among other things) that (1) Morlock's summary judgment is granted; (2) the February 2, 2016 foreclosure sale of the Property is void; (3) the substitute trustee's deed dated February 8, 2016 is declared void; (4) all liens of ROF are declared void; and (5) Morlock is the "owner of the Property, free and clear of any liens held by" ROF.

The trial court signed an order denying ROF's motion for new trial on February 26, 2018. The court concluded ROF failed to demonstrate the allegedly newly discovered evidence "came to [ROF]'s knowledge since the trial," and "the failure to discover the evidence sooner was not due to a lack of diligence."

ROF filed a timely notice of appeal.

## ANALYSIS

### I.     Summary Judgment based on Statute of Limitations

In its first issue, ROF contends the trial court erroneously granted summary judgment in favor of Morlock on the statute of limitations defense because "limitations was tolled while [Morlock's] first suit was pending."

#### A.     Standard of Review and Applicable Law

This case arrives on appeal by way of cross-motions for traditional summary judgment. We review summary judgments *de novo*. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). In a traditional motion for summary judgment, the movant must show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Lujan*, 555 S.W.3d at 84. A party moving for summary judgment must conclusively prove all elements of its cause of action or defense as a matter of law. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *Godoy v. Wells Fargo*

5

*Bank, N.A.*, 542 S.W.3d 50, 51 (Tex. App.—Houston [14th Dist.] 2017), *aff'd*, 575 S.W.3d 531 (Tex. 2019). When both sides move for summary judgment and the trial court grants one motion but denies the other, the reviewing court should review both sides' summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered. *Wolf*, 44 S.W.3d at 566; *see also S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013).

A statute of limitations does not give any right of action; rather, it restricts the period within which a party can assert a right. *Landers v. Nationstar Mortg., LLC*, 461 S.W.3d 923, 925 (Tex. App.—Tyler 2015, pet. denied); *Hunt Steed v. Steed*, 908 S.W.2d 581, 583 (Tex. App.—Fort Worth 1995, writ denied). The primary purpose of a statute of limitations is to compel the exercise of a right within a reasonable time so that the opposite party has a fair opportunity to defend. *Cont'l S. Lines, Inc. v. Hilland*, 528 S.W.2d 828, 831 (Tex. 1975); *Landers*, 461 S.W.3d at 925.

Section 16.035(a) provides that a "person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code Ann. § 16.035(a). A "real property lien" includes a deed of trust. *See id*. § 16.035(g)(2). Section 16.035(b) provides that a "sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues." *Id*. § 16.035(b).

"If a series of notes or obligations or a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment."

6

*Id*. § 16.035(e). When, as here, the note or deed of trust contains an optional acceleration clause, the cause of action accrues, and the limitations period begins to run, when the "holder actually exercises its option to accelerate." *Wolf*, 44 S.W.3d at 566.

Therefore, a sale of property pursuant to a power of sale in a mortgage or deed of trust must take place within four years of the exercise of the option to accelerate. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.035(b); *Wolf*, 44 S.W.3d at 567. Once the four-year limitations period has expired, both the real property lien and the power of sale to enforce the real property lien become void. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.035(d); *Wolf*, 44 S.W.3d at 567. The running of limitations is tolled by statute in the event of the obligor's death or a written, recorded agreement extending the maturity date of the debt or obligation. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.035(c), 16.036, 16.062; *Wolf*, 44 S.W.3d at 567.

### B. Tolling of Statute of Limitations

ROF argues summary judgment should be reversed and rendered in its favor because the February 2, 2016 foreclosure sale was not barred by the applicable four-year statute of limitations, and thus neither the foreclosure sale nor the foreclosure sale deed were void. ROF acknowledges that the limitations period to enforce the deed of trust through non-judicial foreclosure began to run in December 2011 (when its predecessor Metlife exercised the option to accelerate) and limitations would have expired in December 2015. However, ROF contends the statute of limitations was equitably tolled from January 2012 (when Morlock filed its first suit to quiet title) until September 2013 because "Metlife was effectively prevented from selling the property at a non-judicial sale during the 618 day 'pendency of legal proceedings' the sole purpose of which was to determine

7

whether Metlife's legal remedy was or was not available." According to ROF, "[u]ntil the Fifth Circuit affirmed judgment in its favor, Metlife was prevented from exercising the legal remedy of a superior lien holder by the pendency of Morlock's suit challenging that status."

To support its argument, ROF heavily relies on *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991) and *Pioneer Bldg. & Loan Ass'n v. Johnston*, 117 S.W.2d 556 (Tex. App.—Waco 1938, writ dism'd). ROF particularly points to the following language in *Hughes* and *Pioneer*: "'a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right.'" *Hughes*, 821 S.W.2d at 157 (quoting *Walker v. Hanes*, 570 S.W.2d 534, 540 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.)); *Pioneer*, 117 S.W.2d at 559. However, we find both cases inapplicable.

*Hughes* was a malpractice case. In *Hughes*, plaintiffs claimed their attorney erred in failing to name them temporary managing conservators of the child they planned to adopt. 821 S.W.2d at 155-56. When the biological mother had a change of heart, she sued for custody of the child, and plaintiffs counterclaimed for termination of her rights. *Id.* The court of appeals reversed a judgment for plaintiffs, holding they lacked standing to assert their claim. *Id.* at 156. Plaintiffs then sued their attorney for malpractice, contending that they would have prevailed in the parental rights termination suit if they had been named temporary managing conservators originally. *Id.* The supreme court held that limitations was tolled on the malpractice claim during the pendency of the termination litigation. *Id.* at 157.

The court explained that if limitations were not tolled, plaintiffs would have been required to file the malpractice suit while the termination suit was still

8

pending, and to assert in one suit that their attorney's actions were proper and in the other suit that his actions were improper. *Id*. at 156-57. The supreme court stated that, when "'a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right.'" *Id*. at 157 (quoting *Walker*, 570 S.W.2d at 540). The court concluded this rationale applied to the plaintiffs' malpractice suit and "limitations are tolled because the viability of the second cause of action depend[ed] on the outcome of the first." *Id*. It held that when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted. *Id*.

However, the supreme court made clear that *Hughes* was a very limited holding, stating as follows:

> *Hughes* does not hold that limitations is tolled whenever a litigant might be forced to take inconsistent positions. Such an exception to limitations would be far too broad. We expressly limited the rule in *Hughes* to attorney malpractice in the prosecution or defense of a claim that results in litigation. In such circumstances, to require the client to file a malpractice claim against the lawyer representing him in another case would necessarily make it virtually impossible for the lawyer to continue his representation. The client's only alternative would be to obtain other counsel. That consideration, coupled with the necessity of taking inconsistent positions, persuaded us to adopt a tolling rule in *Hughes*. We restricted it to the circumstances presented.

*Murphy v. Campbell*, 964 S.W.2d 265, 272 (Tex. 1997).

*Pioneer* is also distinguishable from the case before us in a material way. In *Pioneer*, borrowers filed suit against Pioneer Building & Loan Association to cancel notes and deeds of trust "evidencing two separate loans and to restrain a

sale of the mortgaged property under the powers given in the deeds of trust." *Pioneer*, 117 S.W.2d at 557. The trial court granted a temporary and permanent injunction restraining the lender from selling the mortgaged property under the powers given in the deeds of trust. *Id*. at 557-59. The lender was thus prevented from exercising its legal right to sell the property at a non-judicial foreclosure sale. *Id*. The court of appeals held that the statute of limitations for non-judicial foreclosure was tolled during the time the lender was restrained by the trial court's injunction from exercising the power of sale in the deeds of trust. *Id*. at 559.

Here, the record contains no evidence of a comparable impediment that prevented ROF from asserting or preserving its non-judicial foreclosure remedy. Contrary to ROF's contention that the trial court should have concluded (based on *Hughes* and *Pioneer*) that ROF's right to sell the property under the deed of trust was not barred by limitations, neither case presents a basis for tolling limitations. This case is not a malpractice case, nor does ROF contend it was forced to take inconsistent positions in litigation as the parties in *Hughes*. The record also does not contain any evidence that ROF was restrained or enjoined from exercising the power of sale in the deed of trust as in *Pioneer*. ROF asserts in its brief that Morlock "aborted," "interrupted," and "arrested Metlife's timely enforcement of its non-judicial foreclosure right," and that Morlock was "'directly responsible' for issuance of a restraining order against Metlife that stopped a timely scheduled foreclosure sale." ROF cites to no evidence in the record to support these statements, and our review of the record has not revealed an injunction or restraining order.

We also are not persuaded by ROF's assertion that "[t]here was no counterclaim or alternative remedy available to Metlife." Nothing prevented ROF from filing a counterclaim and preserving its legal remedy and right to non-

judicially foreclose under the deed of trust after Morlock filed its first suit to quiet title in January 2012. We see no reason why ROF could not have asserted a counterclaim seeking an order permitting foreclosure on the Property under the deed of trust.

We conclude the record contains no evidence of a legal impediment that prevented ROF from asserting and preserving its non-judicial foreclosure remedy within the four-year statute of limitations so as to warrant a tolling of limitations during the pendency of Morlock's first suit. Therefore, we conclude the trial court did not err in (1) finding that the statute of limitations was not equitably tolled, and (2) granting summary judgment in favor of Morlock and against ROF. Accordingly, we overrule ROF's first issue.

## II.     Motion for New Trial based on Newly Discovered Evidence

In its second issue, ROF contends the trial court erred by denying its motion for new trial when "evidence discovered after summary judgment would have produced a different result as a matter of law."

A party seeking a new trial on grounds of newly discovered evidence must demonstrate to the trial court that (1) the evidence has come to its knowledge since the trial, (2) its failure to discover the evidence sooner was not due to lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is so material it would probably produce a different result if a new trial were granted. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). We review the denial of a motion for new trial for abuse of discretion. *Id*.

ROF filed a motion for new trial asserting (1) it hired a firm to audit its files after summary judgment, (2) the firm found a notice of default dated May 13, 2014, (3) the notice sent by ROF's predecessor to the Borrowers indicated the

11

earlier acceleration was abandoned (thus showing that ROF's foreclosure sale was within the four-year statute of limitations), (4) despite ROF's diligent search of its records prior to filing its summary judgment motion, it was unable to locate the notice, and (5) this newly discovered evidence "would almost certainly have resulted in summary judgment being granted for [ROF], rather than [Morlock]." ROF only attached a business records affidavit and the notice of default to its motion for new trial.

In response, Morlock asserted that ROF failed to establish the four elements necessary to obtain a new trial based on newly discovered evidence. Morlock also pointed out that ROF's "statements [in the motion for new trial] are not verified and do not constitute any sworn evidence." ROF filed a reply but did not address Morlock's complaints regarding the lack of evidence. The trial court denied ROF's motion because ROF failed to demonstrate the first two required elements.

On appeal, ROF complains "the trial court mechanically applied the 'four factor test' generally relied on" when it "determined ROF III presented 'no evidence' that the May, 2014 notice of default came to ROF III's knowledge since the trial and no evidence that the failure to discover the record sooner 'was not due to a lack of diligence.'" ROF states it presented "a business records affidavit 'proving up' the May 13, 2014 notice of default." It also states that, "[r]ather than offering affidavit testimony of elements one and two—that the notice of default was discovered after judgment and an explication on the diligence used to discover evidence before judgment—ROF III's counsel set forth such matters in the body of the motion and reply in support of the motion for new trial." According to ROF, "the historic cases from which the four part test derives do not appear to expressly require admissible evidence." Therefore, ROF contends, "the explanations offered in the motion and the reply in support should have sufficed to establish when the

May 13, 2014 notice of default was found and why it was not found sooner."

We reject ROF's argument. To obtain a new trial based on newly discovered evidence, each of the four elements must be established by an affidavit or other admissible, competent evidence. *See Wagley v. Neighborhood Ins. Specialists*, No. 14-16-00859-CV, 2018 WL 2139196, at *8 (Tex. App.—Houston [14th Dist.] May 10, 2018, no pet.) (mem. op.) ("Wagley did not attach to her motion for new trial an affidavit or any other evidence showing that the 'newly discovered' evidence came to her attention after the trial court granted summary judgment or that she used due diligence yet still was unable to obtain the evidence at the time she responded to the motion for summary judgment."); *Nixon v. GMAC Mortg. Corp.*, No. 05-08-00256-CV, 2009 WL 2973660, at *4 (Tex. App.—Dallas Sept. 18, 2009, no pet.) (mem. op.) (To obtain a new trial based on newly discovered evidence, "[e]ach of the [four] elements must be established by an affidavit of the party."); *Nguyen v. Minh Food Co.*, 744 S.W.2d 620, 621 (Tex. App.—Dallas 1987, writ denied) ("It is well settled that in order to require the granting of a new trial on grounds of newly discovered evidence, *it is essential that the moving party introduce admissible, competent evidence at the hearing on the motion for new trial showing* [the four elements].") (emphasis in original); *see also Poe v. Nessa's Mexican Rest. Inc.*, No. 14-00-01336-CV, 2002 WL 192366, at *2 (Tex. App.—Houston [14th Dist.] Feb. 7, 2002, no pet.) (mem. op., not designated for publication) ("Poe's motion did not include any affidavit establishing due diligence."); *Miller v. Miller*, No. 14-96-00326-CV, 1996 WL 727352, at *3 (Tex. App.—Houston [14th Dist.] Dec. 19, 1996, no writ) (mem. op., not designated for publication) ("Stephanie did not offer any competent proof to support her assertion of newly discovered evidence. Her motion for new trial is not only unverified, but is unsupported by any affidavits or exhibits.").

We conclude the trial court correctly determined ROF failed to present any evidence that (1) the newly discovered evidence has come to its knowledge since the trial and (2) its failure to discover the evidence sooner was not due to a lack of diligence. The trial court therefore acted within its discretion in denying ROF's motion for new trial. Accordingly, we overrule ROF's second issue.

## CONCLUSION

We affirm the trial court's judgment.


/s/     Meagan Hassan
        Justice


Panel consists of Justices Christopher, Hassan, and Poissant.

14